UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DENNIS E. ROBERGE<br>KRISTI ROBERGE,<br>Plaintiffs<br><br>v.<br><br>AMICA MUTUAL INS. CO.<br>Defendant. | ) | CIVIL ACTION NO. 3:15-CV-01262-WWE |

**DEFENDANT, AMICA MUTUAL INSURANCE COMPANY'S, REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Pursuant to United States District Court for the District of Connecticut Local Rule of Civil Procedure 7(d) Amica Mutual Insurance Company hereby submits this reply memorandum in support of its motion to dismiss.[1]

I. *METSACK v. LIBERTY MUT. FIRE INS. CO.*, 2015 WL 5797016 (D. Conn. Sept. 30, 2015) IS NOT DETERMINATIVE OF THIS MATTER BECAUSE (1) IT INVOLVES POLICY LANGUAGE WHICH IS MATERIALLY DIFFERENT THAN THAT AT ISSUE HERE AND (2) ITS ANALYSIS DOES NOT APPLY THE "LAST ANTECEDENT RULE" AND RESULTS IN A HOLDING CONTRARY TO CONNECTICUT'S RULES OF INSURANCE POLICY INTERPRETATION.[2]

On the day that Amica filed its motion to dismiss, the court issued its decision in Metsack v. Liberty Mut. Fire Ins. Co., 2015 WL 5797016 (D. Conn. Sept. 30, 2015), which Plaintiffs now attempt to rely on in support of their argument that this court should ignore the explicit distinction in the policies between the terms "footing" and "foundation." This argument fails because (1) the policy language at issue in this case is

[1] As an initial matter, Amica states that at the time a response to Plaintiffs' Complaint was due, Amica had not yet located all policies issued to Plaintiffs, which policies date back to July 26, 1997. Amica has now located all policies issued to Plaintiffs for their property located at 132 Zeya Drive, Coventry, Connecticut, 06238, and/or identified the relevant policy language which applied at various times.

[2] Section I of Amica's Reply Memorandum responds to Section III of Plaintiffs' Opposition, pages 7-9.



975717.1

materially different than that at issue in Metsack, (2) Metsack's analysis fails to apply the "last antecedent rule," the application of which undermines its analysis, and (3) Metsack's analysis "eliminate[]s as meaningless, or disregard[s] as inoperative" the policy's distinction between the term "footing" and "foundation," despite the fact that a "reasonable meaning consistent with the other parts of the policy can be given to it," in contradiction of Connecticut rules of insurance policy interpretation. Connecticut Ins. Guar. Ass'n v. Drown, 314 Conn. 161, 189, 101 A. 3d 200 (2014); Downs v. National Casualty Co., 146 Conn. 490, 495, 152 A.2d 316 (1959).

Amica's policies issued between July 26, 2006 and July 26, 2015, include language which explicitly distinguishes between the terms "footings" and "foundation" in three separate portions of each policy.[3] Accordingly, as a matter of law, these two terms cannot be interpreted to mean the same thing, and thereby "eliminated as meaningless," "if any reasonable meaning consistent with the other parts of the policy can be given to it." Downs, 146 Conn. at 495; A.M. Larson Co. v. Lawlor Ins. Agency, 153 Conn. 618, 622, 220 A.2d 32, 34 (Conn.1966).

In Metsack, the court rejected a similar argument. 2015 WL 5797016 at *6-7. However, Metsack's analysis was based on different language than that at issue here. Id. First, the policy at issue in Metsack only distinguished between the terms "footing" and "foundation" once, and did so by way of an amendatory endorsement. Id. Here, in

---

[3] See 2014-2015 Policy attached as Exhibit 1; 2013-2014 Policy attached as Exhibit 2; 2012-2013 Policy attached as Exhibit 3; 2011-2012 Policy attached as Exhibit 4; 2010-2011 Policy attached as Exhibit 5; 2009-2010 Policy attached as Exhibit 6; 2008-2009 Policy attached as Exhibit 7; 2007-2008 Policy attached as Exhibit 8; 2006-2007 Policy attached as Exhibit 9. The attached insurance policies are properly considered on a Fed. R. Civ. P. 12(b)(6) motion because the Plaintiffs have, "actual notice of all the information… and [have] relied upon these documents in framing the complaint." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir.1991)

contrast, each policy issued after July 26, 2006 makes the distinction three times and does so in the main coverage grant issued to the insured. Ex. 1 at pgs. 15, 16, 21; Ex. 2 at pgs.25, 30; Ex. 3 at pgs. 22, 27; Ex. 4 at pgs. 12, 17; Ex. 5 at pgs. 20, 25; Ex. 6 at pgs. 13, 18; Ex. 7 at pgs. 18, 23; Ex. 8 at pgs. 13, 18; Ex. 9 at pgs. 21, 28.

Second, Metsack rejected this argument, in part, because the policy at issue in that case included the following valuation determination language:

> (3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:
>
> (a) Excavations, foundations, piers, or any supports which are below the undersurface of the lowest basement floor;
>
> (b) Those supports described in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement

Id. at *7. In the present case however, the valuation determination language of the policies issued between July 26, 2006 and July 26, 2015 *explicitly differentiates* between the terms "footings" and "foundation." Each of the policies includes the following language in SECTION I – CONDITIONS, D. Loss Settlement:

> **c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:
>
> **(1)** Excavations, *footings, foundations*, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;
>
> **(2)** Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement

Ex. 1 at pg. 21; Ex. 2 at pg. 30; Ex. 3 at pg. 27; Ex. 4 at pg. 17; Ex. 5 at pg. 25; Ex. 6 at pg. 18; Ex. 7 at pg. 23; Ex. 8 at pg. 18; Ex. 9 at pg. 28 (italics supplied). To hold that a portion of the policy that explicitly differentiates between two terms supports the conclusion that the two terms can mean the same thing violates Connecticut rules of insurance policy construction, as such an interpretation would "eliminate[] as meaningless, or disregard[] as inoperative" the Policy language, despite the fact that a "reasonable meaning consistent with the other parts of the policy can be given to" this explicit distinction. Downs, 146 Conn. at 490; A.M. Larson, 153 Conn. at 622.

Additionally, Amica respectfully suggests that the Metsack court's analysis is flawed in two key ways. First, with respect to its analysis of the valuation determination language at issue in that case, the Metsack decision fails to apply the "last antecedent rule", the application of which would undermine its analysis. 2015 WL 5797016 at *6-7; Drown, 314 Conn. at 189. In Metsack Court found that the valuation determination language quoted above indicated that "foundation" could be construed to mean "footing" because (1) "**a foundation can exist 'below the undersurface of the lowest basement floor**,' which implies that a basement wall and a foundation are not *always* one and the same," and (2) "the policy in at least some capacity differentiates between homes constructed with and without a basement by distinguishing 'foundation walls…if there is no basement' from '**foundations below the undersurface of the lowest basement floor**.'" Id. (bold supplied).

Metsack's analysis relies on its assumption that the phrase "below the undersurface of the lowest basement floor" modifies the term, "foundation." However,

under the "last antecedent rule" it does not. Connecticut Ins. Guar. Ass'n v. Drown, 314 Conn. 161, 189, 101 A. 3d 200 (2014) (noting that "the last antecedent rule of contractual and statutory construction…provides that 'qualifying phrases, absent a contrary intention, refer solely to the last antecedent in a sentence'"). In Metsack the qualifying phrase "below the undersurface of the lowest basement floor" referred only to the phrase "any supports," which was the "last antecedent" in the sentence. Drown, supra. Accordingly, in Metsack the policy did not state that "foundations below the undersurface of the lowest basement floor" should be excluded when calculating the value of the property. Id. at *7. Rather the policy stated that (1) excavations, (2) foundations, (3) piers, *or* (4) any support which are below the undersurface of the lowest basement floor, should not be included when calculating the replacement cost value of the property. Id. The phrase "which are below the undersurface of the lowest basement floor" does not modify the term foundation, but rather only modifies the term "any support."

Finally, Amica respectfully suggests that the Metsack court's reasoning is flawed because it suggests that a finder of fact can be permitted to interpret the policy in a manner which renders the policy's language meaningless, despite the fact that a reasonable interpretation exists which does not render the language meaningless. 2015 WL 5797016 at *6; Downs, 146 Conn. at 495. The Metsack decision states as follows:

> At the time the subject premises were constructed it was a customary building practice in Connecticut to construct a home by first excavating the site, **then erecting footings** consisting of a concrete footprint of the house, **erecting a basement or foundation consisting of a horizontal base or floor and vertical walls on top of the footings** which serves as the home's basement, and erect the above-ground floors



975717.1

> and walls of the home on top of the basement. Employing that method of construction, the footings beneath the basement could constitute a separate structural component serving as the structural support beneath the basement for the house. **In such circumstances, a reasonable trier of fact could conclude the "footings" to be the "foundation."** This interpretation would not render either term superfluous, because, there may be circumstances in which a house has foundational walls, supported by footings, without any basement. In such circumstances, the "foundation" and "footings" could refer to different elements of the below-ground masonry structure supporting the house, necessitating that the Policy distinguish between the two terms.

2015 WL 5797016 at *6. The Court's reasoning essentially holds that when a home is constructed by "erecting footings," and then "erecting a… foundation," a finder of fact "could conclude the 'footings' to be the 'foundation.'" Id. To the contrary, where the policy explicitly distinguishes between these terms, and the Court's own example provides a clear example of the "reasonable meaning consistent" with this distinction, to wit that the "footings" be considered footings and the "foundation" be considered a foundation, as a matter of law a finder of fact should not be permitted to find that these two separate and distinct items are the same. Downs, A.M. Larson, supra. Where the policy distinguishes between the two terms, and an interpretation exists which gives meaning to this distinction, the distinction "is to be given effect, if possible, and no word or clause eliminated as meaningless, or disregarded as inoperative, if any reasonable meaning consistent with the other parts of the policy can be given to it." Id. Metsack does the opposite, by stating that where an interpretation of the policy exists which can give effect to each word in the policy, *without* ignoring the language of the policy, a finder of fact is still permitted to ignore the policy's explicit distinction.

## II. PLAINTIFFS CLAIM FOR "COLLAPSE" COVERAGE UNDER THE POLICIES ISSUED TO THEM FROM JULY 26, 2006 TO JULY 26, 2015, FAILS AS A MATTER OF LAW BECAUSE THEY HAVE NOT PROVIDED A "RESPONSIBLE INTERPRETATION" OF THESE INSURANCE POLICIES THAT ENTITLES THEM TO COVERAGE.[4]

The policies provided to Plaintiffs from July 26, 2006 until July 26, 2015, define the term "Collapse."[5] Plaintiffs have not alleged facts in their Complaint, or argued facts in their opposition, which "plausibly suggest[s]" that their claim falls within the "collapse" coverage provided in the policies issued from July 26, 2006 to July 26, 2015.

Amica's main brief sets forth the "collapse" language in the policy attached to Plaintiffs' Complaint. See Amica's main brief at pages 5-6; Ex. 1 at pgs. 33-34. The policies issued to Plaintiffs for the policy periods of 2013 – 2014 and 2012-2013, include the same language. See Ex. 2 at pg. 42; Ex. 3 at pg. 39. Additionally, the policies issued to Plaintiffs from July 26, 2006 to July 26, 2013, provide the following with respect to "collapse" coverage:

> **8. Collapse**
>
> ...
>
> **b.** With respect to this Additional Coverage:
>
> **(1)** Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.
>
> **(2)** A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

---

[4] Section I of Amica's reply memorandum responds to Section IV of Plaintiffs' opposition, pages 9-12.

[5] See Ex. 1 at pgs. 33-34; Ex. 2 at pg. 42; Ex. 3 at pg. 39; Ex. 4 at pgs. 26-27; Ex. 5 at pgs. 35-36; Ex. 6 at pgs. 27-28; Ex. 7 at pgs. 32-33; Ex. 8 at pgs. 28-29; Ex. 9 at pgs. 35-36.

**(3)** A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

**(4)** A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling shrinkage or expansion.

**c.** We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:

**(1)** The Perils Insured Against;

**(2)** Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

...

**(6)** Use of defective material or methods in construction, remodeling or renovation.

**d.** Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under e.(2) through (6) above, unless the loss is a direct result of the collapse of a building or any part of a building.

See Ex. 4 at pgs. 26-27; Ex. 5 at pgs. 35-36; Ex. 6 at pgs. 27-28; Ex. 7 at pgs. 32-33; Ex. 8 at pgs. 28-29; Ex. 9 at pgs. 35-36.

Many courts throughout the country have analyzed policies that include these definitions, or similar definitions, of "collapse" coverage. Although courts have disagreed regarding whether the policy terms are ambiguous or not, they have all applied the policy language to the facts of the case to determine if coverage exists. Miller v. First Liberty Ins. Corp., 2008 WL 2468605, *4 (E. D. Penn. June 17, 2008) (ruling, in a case involving the nearly identical language to definition of "collapse" in the Policy, "that the collapse provision in the Policy is unambiguous…"); Residential

Management (N.Y.) Inc. v. Federal Ins. Co., 2012 WL 3288671, *9 (E.D.N.Y. Aug. 12, 2012) (holding that nearly identical policy language defining collapse not ambiguous); Mount Zion Baptist Church of Marietta v. Guideone Elite Ins. Co., 808 F.Supp.2d 1322, 1325 (N.D.Ga. 2011) (holding nearly identical policy language defining collapse not ambiguous); Rector St. Food Enterprise, LTD. v. Fire & Cas. Ins. Co. of Connecticut, 35 A.D.3d 177, 827 N.Y.S.2d 18 (2006) (holding term collapse was unambiguous when defined in policy); Landmark Realty, Inc. v. Great American Ins. Co., 2010 WL 5055805 (D. Md. Dec. 3, 2010)(holding that language was ambiguous but that collapse coverage "clearly applie[d]… because there is no dispute that the collapse of [the building] resulted in the entire building being unusable for its intended purpose."); Malbco Holding, LLC v. Amco Ins. Co., 629 F.Supp.2d 1185 (D. Or. 2009)(holding that language was ambiguous but that "to obtain collapse coverage under the Policy, [the insured] must establish that during the policy period, at least part of the [building] (1) abruptly fell down or caved in, (2) such that it could not be occupied for its intended purposes, (3) due to decay [a cause of loss that covered under the collapse coverage]."); 130 Slade Condo. Ass'n, Inc. v. Millers Capital Ins. Co., 2008 WL 2331048 (D. Md. June 2, 2008)(holding policy language was ambiguous but that language "require[d] an actual, abrupt, and major event that renders the building structure unusable" to afford coverage).

It is not enough for the plaintiffs to simply state that some courts have found the "collapse" coverage set forth in Amica's policies ambiguous. In order to "plausibly suggest[]" a claim for coverage they must also provide a "[responsible] interpretations…which will sustain the claim and cover the loss." Heyman Associates No.

1 v. Insurance Company of the State of Pennsylvania et al. 231 Conn. 756, 769-770 (1995) *quoting* Raffel v. Travelers Indemnity Co., 141 Conn. 389, 392, (1954). This they have not done.

Accordingly, Plaintiffs, who have not alleged that (1) "[their home] or any part of [their home] cannot be occupied for its intended purpose" or (2) that an "abrupt" collapse occurred, are not entitled to "collapse" coverage under the policies issued between July 26, 2006 and July 26, 2015, under the analysis of any court who has considered this coverage.

## CONCLUSION

For the above reasons, and those set forth in Amica's Motion to Dismiss and Memorandum of Law in Support thereof, Defendant Amica Mutual Insurance Company moves that this Honorable Court dismiss Plaintiffs' First Amended Complaint and enter judgment for Defendant.

For the Defendant,
Amica Mutual Insurance Company,
By its Attorneys,

*/s/ Anthony J. Antonellis*

Anthony J. Antonellis, BBO #29323
Sloane & Walsh, LLP
Three Center Plaza, 8th Floor
Boston, Massachusetts 02108
Tel: 617-523-6010
Fax: 617-227-0927
Email: AAntonellis@sloanewalsh.com

Date: November 4, 2015

CERTIFICATE OF SERVICE

I, Anthony J. Antonellis, Esq., do hereby certify that on this 4th day of November, 2015 I caused the foregoing document to be filed via the ECF filing system copies of which will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent via email to those indicated as non-registered participants.

*/s/ Anthony J. Antonellis*
Anthony J. Antonellis