UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

DENNIS E. ROBERGE          )
KRISTI ROBERGE,            )
    Plaintiffs             )
                 )   CIVIL ACTION NO. 3:15-CV-01262-WWE
                 )
v.                         )
                 )
AMICA MUTUAL INS. CO.      )
    Defendant.             )

## ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' SECOND AMENDED COMPLAINT

## FIRST DEFENSE

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

6. Admitted in Part. It is admitted that Amica Mutual Insurance Company issued a policy of homeowner's insurance covering the subject property for a period of time. The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph pertaining to when Plaintiffs purchased the Property.

7. Admitted in Part. It is admitted that Plaintiffs paid the premium each year during the coverage period. To the extent that the paragraph purports to state allegations of fact or claims against the defendant/plaintiff in counterclaim, they are denied. The contents of the document attached as Exhibit A to Plaintiff's Complaint speak for themselves.

## COUNT I
## (Declaratory Judgment)

8. The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

1

9. The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

10. The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

11. The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

12. The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

13. Denied.

14. The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

15. The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

16. The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

17. Admitted

18. The defendant states that the allegations contained in paragraph 18 of the Second Amended Complaint state a legal conclusion to which no answer is required.  However, to the extent that the paragraph purports to state allegations of fact or claims against the defendant, they are denied.

19. Admitted

20. This paragraph makes characterizations of a written document, the contents of which speak for themselves, and requires no response. However, to the extent that the paragraph purports to state allegations of fact or claims against the defendant, they are denied.

21. Denied.

22. Denied.

23. Admitted in Part. It is admitted that defendant initiated a thorough investigation into Plaintiffs' claim and that defendant denied coverage of the Plaintiffs' claim on

February 15, 2017. To the extent that the paragraph purports to state allegations of fact or claims against the defendant, they are denied.

24. Denied.

25. The defendant states that the allegations contained in paragraph 25 of the Second Amended Complaint state a legal conclusion to which no answer is required.  However, to the extent that the paragraph purports to state allegations of fact or claims against the defendant, they are denied.

**COUNT II**
**(Breach of Contract)**

26. The defendant restates and incorporates herein by reference its answers to paragraphs 1 through 25 above.

27. Denied.

28. The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

**COUNT III**

29. The defendant restates and incorporates herein by reference its answers to paragraphs 1 through 28 above and paragraphs 39 through 46 below.

30. Admitted.

31. Denied.

32. Denied.

33. Denied.

34. Denied.

35. Denied.

36. Denied.

37. Denied.

## COUNT IV
## (Unfair and Deceptive Practices in Violation of the Connecticut Unfair Insurance Practices Act and the Connecticut Unfair Trade Practices Act)

38. The defendant restates and incorporates herein by reference its answers to paragraphs 1 through 37 above.

39. Admitted.

40. Admitted in Part. This paragraph contains allegations of fact against a party other than Defendant and therefore require not response. It is admitted that defendant participates in the Insurance Services Office, Inc. To the extent that the paragraph further purports to state allegations of fact or claims against the defendant, they are denied.

41. This paragraph contains allegations of fact against a party other than Defendant and therefore require not response. To the extent that the paragraph further purports to state allegations of fact or claims against the defendant, defendant is without knowledge sufficient to form a belief and calls upon Plaintiff for proof.

42. Denied.

43. Denied

44. Denied.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

52. Denied.

53. Denied.

## AFFIRMATIVE DEFENSES

### Second Affirmative Defense

1. The insurance policy which is the subject of this action excluded loss involving collapse.

2. The loss suffered by the plaintiffs involved collapse.

### Third Affirmative Defense

1. The policy which is the subject of this action excluded loss caused by wear and tear or deterioration.

2. The loss suffered by the plaintiffs was caused by wear and tear or deterioration.

### Fourth Affirmative Defense

1. The insurance policy which is the subject of this action excluded loss caused by inherent vice or latent defect.

2. The loss suffered by the plaintiffs was caused by inherent vice, or latent defect.

### Fifth Affirmative Defense

1. The insurance policy which is the subject of this action excluded loss caused by swelling, shrinking, bulging or expansion including the resultant cracking of, *inter alia*, foundations and walls.

2. The loss suffered by the plaintiffs was caused by swelling, shrinking, bulging or expansion including the resultant cracking of, *inter alia*, foundations and walls of their home.

### Sixth Affirmative Defense

1. The insurance policy which is the subject of this action excluded loss caused by neglect regardless of whether any other cause or event contributed concurrently or in any sequence to the loss.

2. The loss suffered by the plaintiffs was caused by at least in part by plaintiffs' neglect.

## Seventh Affirmative Defense

1. The insurance policy which is the subject of this action excluded loss caused directly or indirectly by water below the surface of the ground including water which exerts pressure on or seeps or leaks through a building foundation or other structure regardless of any other cause or event contributing concurrently or in any sequence to the loss.

2. The loss suffered by the plaintiffs was caused by at least in part by water below the surface of the ground which exerted pressure on or seeped through the plaintiffs/defendants in counterclaim's home's foundation or other structure.

## Eighth Affirmative Defense

1. The insurance policy which is the subject of this action excluded loss caused by faulty, inadequate, or defective design, workmanship, construction, or construction materials.

2. The loss suffered by the plaintiffs was caused by faulty, inadequate, or defective design, workmanship, construction, or construction materials.

## Ninth Affirmative Defense

1. The insurance policy which is the subject of this action required the plaintiffs to give prompt notice of the loss to the defendant or its agent.

2. The plaintiffs failed to give prompt notice of the loss.

## Tenth Affirmative Defense

1. The insurance policy which is the subject of this loss provided that suit be commenced within two years after the date of loss.

2. The plaintiffs failed to commence suit within two years after the date of loss.

## Eleventh Affirmative Defense

1. The insurance policy which is the subject of this action applied only to loss which occurred during the policy period.

2. The loss suffered by the plaintiffs did not occur during the policy period.

## Twelfth Affirmative Defense

1. The insurance policy which is the subject of this action is void when an insured intentionally conceals or misrepresents a material fact or circumstance, or makes false statements relating to the insurance.

2. The plaintiffs concealed or misrepresented material facts or circumstances and made false statements relating to their claim.

## Thirteenth Affirmative Defense

The acts complained of were committed by a person(s) for whose conduct the defendant is not legally responsible.

## Fourteenth Affirmative Defense

The plaintiffs Second Amended Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## Sixteenth Affirmative Defense

This action is barred by the applicable statute of limitations and/or statute of repose.

## Seventeenth  Affirmative Defense

To the extent the defendant had any obligations to the plaintiffs, such obligations have been fully, completely, and properly performed.

## Eighteenth Affirmative Defense

The plaintiffs' claims are barred under the equitable doctrine of laches and/or unclean hands.

## Nineteenth Affirmative Defense

The plaintiffs' claims are barred by the doctrine of fortuity.

## Twentieth Affirmative Defense

To the extent that the insurance policy which is the subject of this action provides coverage for loss involving collapse, the plaintiffs' claims do not meet the policy's definition of collapse.

## DEFENDANT, AMICA MUTUAL INSURANCE COMPANY'S, COUNTERCLAIM FOR DECLARATORY JUDGMENT

## PRELIMINARY STATEMENT

1. This is a counterclaim for declaratory relief for the purpose of determining the parties' respective rights and obligations under an insurance policy issued by Amica Mutual Insurance Company to Plaintiffs.

## PARTIES

2. Defendant/Plaintiff in Counterclaim, Amica Mutual Insurance Company ("Amica"), is an insurance company incorporated under the laws of the State of Rhode Island and has its principal place of business at 100 Amica Way, Lincoln, Rhode Island 02490. At all times relevant, Amica was and continues to be engaged in the business of writing homeowner's insurance policies and issuing such policies to homeowners in various states, including the State of Connecticut.

3. Plaintiffs/Defendants in Counterclaim, Dennis E. Roberge and Kristi Roberge (the "Plaintiffs"), own and occupy residential property located at 132 Zeya Drive, Coventry, Connecticut.

## THE POLICY

4. Amica issued a homeowners policy, Policy Number 65070624UT ("the Policy"), with effective dates of coverage of July 26, 2014 through July 26, 2015, to the Plaintiffs.

5. The Policy insured the Plaintiffs' home, located at 132 Zeya Drive, Coventry, Connecticut. (the "property").

6. In pertinent part, the Policy states:

   **"AGREEMENT**

   We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

   ...

   **SECTION I – PROPERTY COVERAGES**

**A.      Coverage A – Dwelling**

    **1.**    We cover:

        **a.**    The dwelling on the residence premises shown in the Declarations, including structures attached to the dwelling;

…

**E.      Additional Coverages**

…

    **8.**    **Collapse [*as amended by Endorsement HO 01 06 12 11*]**

        **a.**    This Additional Coverage does not:

            **(1)**    Increase the limit of liability that applies to the damaged covered property; nor

            **(2)**    Reduce or eliminate coverage with respect to loss that was caused by a Peril Insured Against named under Coverage C.

        **b.**    The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse.

        **c.**    For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

        **d.**    This Additional Coverage – Collapse does not apply to:

            **(1)**    A building or any part of a building that is in danger of falling down or caving in;

            **(2)**    A part of a building that is standing, even if it has separated from another part of the building;

            **(3)**    A building or any part of a building that is standing, even if it shows evidence of cracking, bulging,

sagging, bending, leaning, settling, shrinkage or expansion.

**e.**     We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one of more of the following:

**(1)**     The Perils Insured Against;

**(2)**     Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an **insured** prior to collapse;

**(3)**     Insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an **insured** prior   to collapse;

**(4)**     Weight of contents, equipment, animals or people;

**(5)**     Weight of rain which collects on a roof; or

**(6)**     Use of defective materials or methods in construction, remodeling or renovation.

**f.**     Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **e.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

...

## SECTION I - PERILS INSURED AGAINST

## A.     Coverage A - Dwelling And Coverage B – Other Structures

**1.**     We insure against direct physical loss to property described in Coverages **A** and **B**.

**2.**     We do not insure, however, for loss:

**a**.     Excluded under Section I - Exclusions;

    **b**.    Involving collapse, including any of the following conditions of property or any part of the property:

        **(1)**    An abrupt falling down or caving in;

        **(2)**    Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

        **(3)**    Any cracking, bulging, sagging, bending, leaning, settling,  shrinkage or expansion as such condition relates to **(1)** or **(2)** above;  except as provided in E.8. Collapse under  Section I - Property Coverages;

        except as provided in **E.8** Collapse under Section **I** – Property Coverages;  or

    **c**.    Caused by:

    …

        **(2)**    Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

    …

        **(b)**    Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

        **(c)**    Retaining wall or bulkhead that does not support all or part of a building or other structure; or

    …

        **(6)**    Any of the following:

        **(a)**    Wear and tear, marring, deterioration;

        **(b)**    Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

        **(c)**    Smog, rust or other corrosion, or dry rot;

    …

**(f)**   Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**Exception To c.(6)**

...

Under **2.b**. and **c**. above any ensuing loss to property describe in Coverage **A** and **B** not precluded by any other provision in this policy is covered.

...

## SECTION I – EXCLUSIONS

**A.**   We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

...

**2.**   **Earth Movement**

Earth Movement means:

**a.**   Earthquake, including land shock waves or tremors before, during or after volcanic eruption;

**b.**   Landslide, mudslide or mudflow;

**c.**   Subsidence or sinkhole; or

**d.**   Any other earth movement including earth sinking, rising or shifting;

This Exclusion **A.2**. applies regardless of whether any of the above in **A.2.a**. through **A.2.d**., is caused by an act of nature or is otherwise caused.

However, direct loss by fire, explosion or theft resulting from any of the above in **A.2.a.** through **A.2.d**., is covered.

**3.      Water**

This means:

**a.**      Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

**b**.      Water which:

**(1)**      Backs up through sewers or drains; or

**(2)**      Overflows or is otherwise discharged from a sump, sump pump or related equipment;

**c.**      Water below the surface of the ground,  including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk,  driveway, patio, foundation, swimming  pool or other structure; or

**d.**      Waterborne material carried or otherwise moved by any of the water  referred to in **A.3.a. through A.3.c.** of this exclusion.

This Exclusion **A.3.** applies regardless of whether any of the above, in **A.3.a.** through **A.3.d.**, is caused by an act of nature or is otherwise caused.

This Exclusion **A.3.** applies to, but is not limited to, escape, overflow or   discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in  **A.3.a**. through **A.3.d**., is covered.

...

**5.      Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

...

**B.**   We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in  Coverages **A** and **B** not precluded by any other provision in this policy is covered.

    **1.**   Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

...

    **3.**   Faulty, inadequate or defective:

        **a.**   Planning, zoning, development, surveying, siting;

        **b.**   Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        **c.**   Materials used in repair, construction, renovation or remodeling; or

        **d.**   Maintenance;

of part or all of any property whether on or off the **residence premises**.

...

## SECTION I - CONDITIONS

...

## C.   Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

**1.**   Give prompt notice to us or our agent;

...

**4.**     Protect the property from further damage. If repairs to the property are required, you must:

    **a.**     Make reasonable and necessary repairs to protect the property; and

    **b**.     Keep an accurate record of repair expenses;

    ...

**H.     Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the  date of loss.
    ...

**Q.     Policy Period**

This policy applies only to loss which occurs during the policy period.

    ..."

## THE CLAIM

7. On or about July 15, 2015, the Plaintiffs notified Amica of an alleged defective condition to the property's foundation (the "Claim").

8. Amica promptly initiated a thorough investigation into the Claim and the cause of the cause of the alleged condition to the property's foundation.   Amica completed this investigation and declined coverage on February 15, 2017.

9. On or about March 6, 2017, the Plaintiffs filed a Second Amended Complaint against Amica, seeking a declaration of coverage for the Claim under the terms and conditions of the Policy, and alleging Breach of Contract, violation of the implied covenant of good faith and fair dealing, and violation of the Connecticut Unfair Insurance Practices Act and the Connecticut Unfair Trade Practices Act..

10. In pertinent part, the Plaintiffs' complaint alleges that, due to the presence of a chemical compound in the concrete used to construct their home's foundation that is causing the concrete to expand and degrade, "[a]t some point between the date on which the basement walls were poured and the month of October

2015, the basement walls suffered a substantial impairment to their structural integrity." <u>See</u>, <u>Ex. 1</u>, ¶¶ 10-11, 13.

11. The Claim seeks benefits for the alleged collapse of, and cost to repair, the property's foundation under the terms and conditions of the Policy.

12. Amica timely removed the Plaintiff's Declaratory Judgment action from the Connecticut Superior Court to the instant court on or about September 16, 2016.

**COUNT I**
**(DECLARATORY JUDGMENT)**

13. Amica repeats, re-alleges and incorporates by reference the allegations contained in paragraphs one through fourteen above, as if expressly re-written and set forth herein.

14. An actual and bona fide controversy exists between the parties as to their legal rights and responsibilities with respect to the insurance policy issued by Amica to the Plaintiffs, and the parties' rights and liabilities can only be determined by Declaratory Judgment.

15. There is no coverage under the Policy for the Claim because the claimed condition does not meet the Policy's definition of the term "Collapse" as the condition complained of is not "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose." *See*, **Section I – Property Coverages, E. Additional Coverages**, **8. Collapse** (as amended by Endorsement HO 01 06 01 13), subpart **c.**

16. There is no coverage under the Policy for the Claim because the Policy's "Section I – Exclusions" specifically excludes losses caused directly or indirectly by "Water," including "[w]ater below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation." *See*, **Section I – Exclusions, A. 3. Water**.

17. There is no coverage under the Policy for the Claim because the claimed condition was caused directly or indirectly by "Earth Movement," as that term is defined in the Policy. *See*, **Section I – Exclusions, A. 2. Earth Movement**.

18. There is no coverage under the Policy for the Claim because the Policy's "Section I – Exclusions" specifically excludes losses caused directly or indirectly by "Neglect," meaning the "neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss." *See*, **Section I – Exclusions, A. 5. Neglect**.

19. There is no coverage under the Policy for the Claim because the Policy's "Section I – Exclusions" specifically excludes losses caused directly or indirectly by "[f]aulty, inadequate or defective" "[p]lanning, zoning, development, surveying, siting…[d]esign, specifications, workmanship, repair, construction,  renovation, remodeling, grading, compaction…[m]aterials used in repair, construction, renovation or remodeling…[m]aintenance" "of part or all of any property whether on or off the residence premises." *See*, **Section I – Exclusions, B. 3.**

20. There is no coverage under the Policy for the Claim because the Policy's "Section I – Exclusions" specifically excludes losses caused directly or indirectly by "weather conditions." *See*, **Section I – Exclusions, B. 1.**

21. There is no coverage under the Policy for the Claim because the Policy's "Section - I Conditions" includes "Duties After Loss" which require, in part, that the Plaintiff "[g]ive prompt notice to [Amica] or our agent" and "[p]rotect the property from further damage." *See*, **Section I – Conditions, C. 1.** and **4.**

22. There is no coverage under the Policy for the Claim because the Claim does not satisfy the Policy's "Section - I Conditions" regarding "Policy Period" to the extent that the Policy "applies only to loss which occurs during the policy period." *See*, **Section I – Conditions, Q.**

23. There is no coverage under the Policy for the Claim because the Claim does not satisfy the Policy's "Section - I Conditions" regarding "Suits Against Us" to the extent that "[n]o action can be brought against [Amica] unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss." *See*, **Section I – Conditions, H.**

24. There is no coverage under the Policy for the Claim because the Policy's "Section I – Perils Insured Against" does not provide coverage for loss caused by "[w]ear and tear, marring, deterioration…[m]echanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy

itself…[s]mog, rust or other corrosion, or dry rot…[s]ettling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings." *See*, **Section I – Perils Insured Against, A.2.c.6.(a),(b),(c)** and **(f).**

25. There is no coverage under the Policy for the Claim because the Policy's "Section I – Perils Insured Against" does not provide coverage for loss caused by "[f]reezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a…[f]ooting, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure." *See*, **Section I – Perils Insured Against, A.2.c.2.(b).**

26. There is no coverage under the Policy for the Claim because the Claim does not constitute a fortuitous loss.

WHEREFORE, Amica demands that this Court enter an order in its favor against the Plaintiffs:

1. Declaring that:

   a) There is no coverage under the Policy for the Claim because the claimed condition does not meet the Policy's definition of the term "Collapse" as the condition complained of is not "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose."

   b) There is no coverage under the Policy for the Claim because the Policy's "Section I – Exclusions" specifically excludes losses caused directly or indirectly by "Water," including "[w]ater below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation."

   c) There is no coverage under the Policy for the Claim because the claimed condition was caused directly or indirectly by "Earth Movement," as that term is defined in the Policy.

   d) There is no coverage under the Policy for the Claim because the Policy's "Section I – Exclusions" specifically excludes losses caused directly or indirectly by

"Neglect," meaning the "neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss."

e)   There is no coverage under the Policy for the Claim because the Policy's "Section I – Exclusions" specifically excludes losses caused directly or indirectly by "[f]aulty, inadequate or defective… [p]lanning, zoning, development, surveying, siting…[d]esign, specifications, workmanship, repair, construction,  renovation, remodeling, grading, compaction…[m]aterials used in repair, construction, renovation or remodeling…[m]aintenance…of part or all of any property whether on or off the residence premises."

f)   There is no coverage under the Policy for the Claim because the Policy's "Section I – Exclusions" specifically excludes losses caused directly or indirectly by "weather conditions."

g)   There is no coverage under the Policy for the Claim because the Policy's "Section - I Conditions" includes "Duties After Loss" which require, in part, that the Plaintiff was required to "[g]ive prompt notice to [Amica] or our agent" and to "[p]rotect the property from further damage."

h)   There is no coverage under the Policy for the Claim because the Claim does not satisfy the Policy's "Section - I Conditions" regarding "Policy Period" to the extent that the Policy "applies only to loss which occurs during the policy period."

i)   There is no coverage under the Policy for the Claim because the Claim does not satisfy the Policy's "Section - I Conditions" regarding "Suits Against Us" to the extent that "[n]o action can be brought against [Amica] unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss."

j)   There is no coverage under the Policy for the Claim because the Policy's "Section I – Perils Insured Against" does not provide coverage for loss caused by "[w]ear and tear, marring, deterioration…[m]echanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself…[s]mog, rust or other corrosion, or dry rot…[s]ettling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or     ceilings."

k) There is no coverage under the Policy for the Claim because the Policy's "Section I – Perils Insured Against" does not provide coverage for loss caused by "[f]reezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a…[f]ooting, foundation, bulkhead, wall, or any other structure or device that supports all or  part of a building, or other structure."

l)  There is no coverage under the Policy for the Claim because the Claim does not constitute a fortuitous loss.


2.    Awarding Amica the costs herein expended and such other and further relief that this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

THE DEFENDANT/PLAINTIFF IN COUNTERCLAIM DEMANDS A TRIAL BY JURY ON ALL CLAIMS AND ISSUES.


For   the   Defendant/Plaintiff   in Counterclaim,
Amica Mutual Insurance Company,
By its Attorney,

*/s/ Anthony J. Antonellis*
_____
Anthony J. Antonellis
Sloane & Walsh, LLP
Three Center Plaza, 8th Floor
Boston, Massachusetts 02108
Tel:    617-523-6010
Fax:    617-227-0927
Email: AAntonellis@sloanewalsh.com

Date:  May 10, 2017

CERTIFICATE OF SERVICE

I, Anthony J. Antonellis, Esq., do hereby certify that on this 10th day of May 2017, I caused the foregoing document to be filed via the ECF filing system copies of which will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent via email to those indicated as non-registered participants.


*/s/ Anthony J. Antonellis*
Anthony J. Antonellis